**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| J.W., individually and as parent and next | ) | |
| Friend of K.W., a minor, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:19-CV-44-JVB-JPK |
| | ) | |
| METROPOLITAN SCHOOL DISTRICT | ) | |
| OF WARREN COUNTY, *et al.*, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 50] filed on October 5, 2020, and on Plaintiffs' Motion for Attorneys' Fees and Costs [DE 52] also filed on October 5, 2020. The parties filed responses and replies to both motions, which are fully briefed and ready for the Court's review.

Based on the following, the Court awards attorney fees and costs to Plaintiffs in the amount of $191,877.42.

## FACTUAL BACKGROUND

Plaintiffs J.W. and C.W. (proceeding both individually and as parents and next friends of K.W., a minor) filed the present lawsuit against Defendants Metropolitan School District of Warren County and Wabash River Special Services Cooperative for attorneys' fees and costs pursuant to the Individuals with Disabilities Education Act (IDEA).

### A. Plaintiff K.W. as a Student

K.W. was an elementary school student enrolled in the Defendant School District. (Due Process Hr'g Decision 16, ECF No. 54-1). He had a history of behavioral issues for which he saw health care providers and he received special education services shortly after entering kindergarten

in 2015. *Id.* at 16-18. In the second grade, K.W. "displayed numerous significant violent, aggressive behavioral outburst including throwing objects, biting, kicking, punching, and spitting at adults." *Id.* at 20. In 2017 and 2018, some of K.W.'s behavioral outbursts caused property damage. *Id.* at 22-23, 25. At some point in the fall of 2018, the school filed a civil small claims suit against parents for the cost of the property damage. *Id.* at 26-27. On August 3, 2019, the school's case conference committee informed Plaintiffs that the school would charge Plaintiffs for any damages over $50. *Id.* at 26.

## B. The Due Process Complaint Proceeding

On November 27, 2018, Plaintiffs filed a Complaint and Due Process Hearing Request with the Indiana Department of Education, asserting claims under Indiana special education law and the IDEA. (Due Process Compl., ECF No. 54-2). Plaintiffs alleged, in part, that the School had failed to provide K.W. with a free appropriate public education (FAPE) by failing to develop an appropriate individual education plan (IEP), functional behavior assessment (FBA), and behavior intervention plan (BIP), failing to provide appropriate services and appropriate placement, failing to provide accurate progress reports and monitoring, failing to appropriately train staff, failing to allow K.W.'s parents to meaningfully participate in case conferences, failing to re-evaluate K.W., and failing to properly notify K.W.'s parents about change in placement. *Id.* at ¶ 87.

Plaintiffs asked the Independent Hearing Officer (IHO) to find that Defendants denied FAPE to K.W. and to order a new IEP, compensatory services, assessments, training and consultation for school staff, and a new FBA and BIP. *Id.* at 51-54. Regarding the new IEP, Plaintiffs requested:

1. No provisions requiring the parents to pay for damages resulting from K.W.'s behaviors caused by his disability;

2. A one on one aide, or dedicated classroom para-professional, to ensure K.W. has access consistently to breaks, one-on-one assistance in reading, instructions, and social skills, learning appropriate toileting skills/consistent bathroom breaks;

3. Accurate present levels in the areas of behavior, reading comprehension, reading fluency, decoding, writing, math, social skills, functional skills, and other areas of need;

4. Measurable annual goals with objectives in the areas of behavior, reading comprehension, reading fluency, decoding, writing, math, social skills, toileting, functional skills, life skills, and behavior as well as other necessary areas of need;

5. Quarterly progress reports based on objective measures and provided quarterly to parents;

6. Accommodations including: extrinsic rewards, e.g., free time, for completion of assignments, frequent movement/fidget breaks, visual supports for oral instruction, one-step directions presented in a verbal and written manner, assistance with breaking larger projects into smaller manageable parts, extended time on exams, quizzes, and assignments, copies of teacher's notes to follow along when information is presented orally, use of fidgets, reminders to stay on task and inquiries regarding if he is following along successfully, organizational support due to his diagnoses and difficulties with executive functioning, modification of homework assignments, and positive reinforcement to assist K.W. with increasing his abilities in academic areas;

7. Social work services;

8. Counseling and psychological services;

9. Medical and nursing services;

10. Direct OT services following an independent OT evaluation; and

11. Extended schoolyear services for summer 2019 to prevent further behavioral and academic regression.

*Id.* at 51-52.

A hearing was held over eight days in February and March 2019. (Due Process Hr'g Decision at 12-15, ECF No. 54-1). Over the course of the proceeding, Plaintiffs were represented by three attorneys whose hourly rates were billed at $295 or higher. (Aff. Catherine Michael, ECF No. 1-4; Aff. Thomas Blessing, ECF No. 1-6; Decl. Sonja D. Kerr, ECF No. 1-8).

3

## C. The Administrative Decision

The IHO found that

> The totality of the errors the School made clearly shows the School failed to provide
> this Student a free appropriate public education. Moreover, the School's aggressive
> attempt to force the Student's parents to pay for property damage is nothing less
> than astonishing. It is incomprehensible the School failed to acknowledge or
> recognize that the destruction of property the Student caused during his many
> aggressive outbursts was so clearly a manifestation of his disability and rips at one
> of the fundamental cornerstones of providing students with disabilities a free
> appropriate public education.

(Due Process Hr'g Decision at 38, ECF No. 54-1). As a result, the IHO ordered:

1. The School shall arrange and pay for the Student's ANP and the school nurse
   to participate in person at the Student's Case Conference Committee to convene
   no later than 30 days from the date of this Decision.

2. The School shall add the school nurse consultation as a related service to the
   Student's IEP. The school nurse shall attend all the Student's Case Conference
   Committee Meetings.

3. The school nurse shall have direct communication either in person or by
   telephone with the ANP after each of the Student's appointments with her. The
   school nurse shall be responsible for apprising the ANP of behavioral issues
   and successes the Student has demonstrated as well as conveying any concerns
   about potential side effects the Student may display.

4. Within the 30 days from the date of this Decision, the School shall arrange for
   an inservice training to be provided by a skilled, experienced behavioral
   consultant for all school personnel involved with the Student. The inservice
   shall provide instruction on conducting a proper comprehensive functional
   behavior assessment, devising a BIP with clear, well-defined behaviors,
   implementing a BIP, and objectively monitoring the efficacy of the BIP.

5. Within 45 days of the date of this Decision, the School shall arrange for an
   inservice training on writing objective behavioral goals, devising objective,
   effective means of establishing baselines for the goals, collecting and compiling
   data that can show progress or lack of progress, and incorporating the data into
   the IEP. The inservice shall have mandatory attendance for all school personnel,
   including administrators, who work with or are involved with special education
   students.

6. On January 25, 2019, the School contracted a behavioral consultant to conduct
   an FBA and devise a BIP. The School shall arrange for that behavioral
   consultant or another similarly qualified behavioral specialist to work with

School personnel in implementing the BIP he developed from the FBA. The School shall also work with the consultant or similarly qualified behavioral specialist to develop an objective means of collecting objective data reflecting the student's response to the BIP. The School shall compile those data and integrate the information in the Student's IEP.

7. Within 30 days of this Decision, the School shall write new behavioral goals that reflect the findings of the January 25, 2019 FBA and BIP.

8. Within 30 days of this Decision, the School shall contract with a skilled, experienced, independent behavior specialist to review the Student's records and this Decision and participate in the Student's Case Conference Committee to assist in determining the appropriate placement for this student, including, but not limited to, the amount of direct instruction the Student receives from a special education teacher on academic and behavioral skills.

*Id.* at 38-40. The IHO did not order Defendants to provide compensatory education, a 1:1 aide, extended school year services, social work, counseling and psychological services, occupational therapy, reimbursement, or evaluation for ASD.

### D. Settlement Attempts

During the administrative proceedings, the parties attempted to settle this matter. On January 15, 2019, Plaintiffs proposed two options: either a private placement option or a public school placement. Either option would include the dismissal of the small claims action brought against the parents, an independent educational evaluation, a new BIP, compensatory counseling and educational services, staff training, extended school year, and reimbursement of attorney fees. (Jan. 15, 2019 Offer, ECF No. 54-6).

On January 25, 2019, Defendants responded. They were willing to make changes to K.W.'s IEP regarding goals and accommodations, to work with wrap around services, to provide compensatory education services (including during summer 2019), to provide a social skills group, weekly skills training with a psychologist, twice weekly counseling, 1:1 instruction for 30 minutes per day, to use an outside consultant to conduct a new FBA, to engage an outside consultant to develop a new BIP, train staff, and monitor its implementation for one year, an occupational

therapy evaluation to assess writing and sensory needs, assistive technology evaluation, reimbursement for the parents' choice of independent educational evaluator, secure the services of an outside consultant to monitor K.W.'s IEP services, provide training to staff, and participate in case conferences. Defendants directed Plaintiffs to other counsel regarding the small claims court matter, stating that present counsel was not working on that matter. Defendants agreed to pay a reasonable attorney's fee. Defendants wanted, as part of any settlement agreement, the parents to agree to refrain from all appeals for the term of the settlement agreement, leaving the only method of redress regarding the provision of FAPE through the IEP to be enforcement of the terms of the agreement. Further, the parents would waive all actions against the school's entities, agents, and employees up to the date the agreement is signed. (Jan. 25, 2019 Letter, ECF No. 54-7).

On January 28, 2019, Plaintiffs replied. They wished to see a draft of the IEP proposed by Defendants, including specific terms instead of the school's statements that it will consider items. They also wanted specific numbers of compensatory services offered, clarification on whether services would be provided to address K.W.'s academic, social, behavioral and social skills, and details regarding the provision of services. They requested weekly progress reports. Plaintiffs also desired an admission that Defendants denied FAPE to K.W. Plaintiffs insisted that any settlement would require to Defendants coordinate with their counsel in the small claims court matter. (Jan. 28, 2019 Offer, ECF No. 54-8).

On January 31, 2019, Defendants responded, asking for clarity regarding what would be needed in an IEP to reach settlement. Defendants did not believe a 1:1 aide was needed but were willing to provide 300 hours of special education services through an extended school day and an extended school year. They agreed to weekly progress reports on behavior and quarterly updates on goals and academic progress. Defendants maintained their position that the small claims court

matter needed to be negotiated with different counsel but offered to carve out any issues regarding the small claims suit in the settlement agreement. Due to the upcoming hearing date, Defendants needed an itemized fee statement by February 1, 2019. (Jan. 31, 2019 Letter, ECF No. 54-9).

On February 7, 2019, Plaintiffs countered. They stated that the January 30 proposal was too vague and recounted Defendants' oral statement of no interest in a settlement conference. Many terms were accepted. There was still disagreement about the provision or coordination of wraparound services and uncertainty regarding compensatory services and types of training provided to K.W. Plaintiffs also wanted assurance that the small claims matter (which had been dismissed *without* prejudice) was resolved, noting concern that the school would put in the IEP that it can pursue a claim for damages against the parents. (Feb. 7, 2019 Offer, ECF No. 54-10).

On February 14, 2019, Defendants indicated willingness to hold a case conference or to provide a "more updated initial draft of an IEP." Defendants stated that previous offers were rescinded because those offers had been made to avoid the hearing, which had begun. Defendants were willing to address behavior, sensory processing, compliance with structure/demands, and mood/coping/emotional regulation in K.W.'s IEP. They would provide accommodations for standardized testing and general education, a sensory schedule, services as recommended by Dr. Van Acker, including up to 30 minutes twice per week of direct social skills training and an embedded skill instruction program. Defendants wanted the parents' consent for Defendants to speak with K.W.'s physicians and to have the physicians explain any medication changes to Defendants. Defendants reiterated that they would require an appeal and claim waiver from Plaintiffs. (Feb. 14, 2019 Letter, ECF No. 54-11).

On February 17, 2019, Plaintiffs responded. They agreed to K.W.'s physicians sharing information with Defendants, provided that Defendants paid any associated costs and that one of

the parents would be included on any phone calls. Plaintiffs indicated that a copy of the embedded skill instruction program and the associated training needed to be included as part of the settlement. Plaintiffs were unwilling to waive future rights to sue regardless of Defendants' provision of FAPE. Plaintiffs also mandated that Defendants must agree to dismiss the small claims case with prejudice and agree that K.W.'s school attendance would not be conditioned on the parents' ability to pay costs of property damage in order for Plaintiffs to agree to a full release of all claims. Plaintiffs also requested reinstatement of terms that had previously been accepted, including 300 hours of special education services. (Feb. 17, 2019 Letter, ECF No. 54-12).

In a February 20, 2019 letter, Defendants asked whether Plaintiffs could agree to a draft IEP given to them and, if not, what alterations would be necessary for agreement. (Feb. 20, 2019 Letter, ECF No. 54-13).

On February 22, 2019, Plaintiffs submitted "a final effort to make it clear to you that we are most desirous of settlement": an offer of judgment that accepted Defendants' draft IEP and "the draft settlement offer we sent" (presumably referring to the February 17, 2019 letter). (Feb. 22, 2019 Letter, ECF No. 54-14).

The parties did not reach a settlement agreement, and the IHO's decision, discussed above, followed.

### E. Attorney Fee Discussions

After the IHO's decision was issued, the parties communicated regarding Plaintiffs' attorney fees. On April 12, 2019, Plaintiffs offered a 5% discount on the "approximately $195,000" in attorney fees accrued in the case if Defendants agreed to resolve the case without further litigation by April 19, 2019. (April 12, 2019 Offer, ECF No. 54-15). On April 17, 2019, Defendants requested an updated statement of fees and an extension of time to accept the offer. (April 17, 2019

E-Mail, ECF No. 54-16). On April 22, 2019, Plaintiffs provided the requested invoices and agreed to extend the deadline to respond to April 24, 2019. (April 22, 2019 Letter, ECF No. 54-17). On April 24, 2019, Defendants responded with an offer of $110,000, indicating concerns with the hourly rates, overstaffing, travel time, and degree of success; Defendants' offer was open until April 30, 2019. (April 24, 2019 Letter, ECF No. 54-18). Plaintiffs filed suit on April 26, 2019.

**SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find" for the non-movant. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations omitted). In viewing the facts presented, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

**ANALYSIS**

The IDEA has the purpose "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). The Court has the discretion to "award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." *Id.* at § 1415(i)(3)(B)(i). The starting point for the calculation of a reasonable attorneys' fee award is the lodestar amount (the reasonable number of hours worked multiplied by a

reasonable hourly fee), after which other factors can be considered. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018).

The parties agree that Plaintiffs are prevailing parties and that an award of attorney fees is appropriate, but they disagree on the amount of that award. Plaintiffs request $293,621.74, which represents 817.18 hours of attorney work at rates ranging from $300 to $430 per hour, 29.87 hours of paralegal work at $95 to $110 per hour, and $10,779.64 in costs. Defendants counter that $32,609.25 is the highest appropriate award.

### A. Reasonable Number of Hours

Plaintiffs, as the parties seeking an award of fees, bear the burden of showing the reasonableness of the number of hours claimed. *Bratton v. Thomas Law Firm, PC*, 943 F. Supp. 2d 897, 902 (N.D. Ind. 2013) (citing *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999)). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise  unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from [the lawyer's] fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (en banc)).

Defendant objects to the number of hours claimed as compensable by Plaintiffs, arguing that certain time entries should be disallowed as clerical work, unreasonable travel time, overstaffed hours, vague billing entries, or irrelevant. The Court will first look at the hours expended on the underlying proceeding and then turn to the hours billed at the federal level.

  *1. Due Process Complaint Proceeding*

  Plaintiffs request payment for 616.92 hours worked in relation to the underlying Due Process Complaint proceeding. Defendants contend that at least 309.62 hours should be disallowed. The Court finds the following hours reasonable: Ms. Michael – 303.5 hours, Ms. Kerr – 81.46 hours, Mr. Blessing – 47.5 hours, Ms. Goehler (a paralegal) – 3.7 hours. Connell Michael Kerr's (CMK) costs (which, as billed, include paralegal time) are reduced to $3,716.5. Massillamany Jeter & Carson's (MJC) costs are denied, as insufficient supporting information was supplied.

  *a. Clerical Work*

  Billing for paralegal time is reasonable when doing so is the practice in the relevant market. *Missouri v. Jenkins*, 491 U.S. 274 286-87 (1989). Such paralegal time, however, should never be billed for "purely clerical or secretarial tasks" such as distributing mail or answering a general phone line. *Jenkins*, 491 U.S. at 288 n. 10; *Monk v. Colvin*, No. 2:15-CV-233, 2016 WL 4445659, at *4 (N.D. Ind. Aug 23, 2016).

  Defendants challenge the following paralegal billing entries claimed by MJC as unbillable clerical time:

  12/11/2018 – Finalized drafts of Mot to conduct discovery & e-filed with proposed order – 0.2 hours

  12/20/2018 – Filed Motion to strike answer – 0.2 hours

  1/4/2019 – Download/print school discovery, binder, prep for PHC – 1.5 hours

  1/14/2019 – Finalized & filed response & mot to compel w exhibit a – 0.2 hours

  1/16/2019 – Filed mot to quash – 0.1 hours

  1/25/2019 – Finalized FAPE brief, organized/labeled exhibits for brief, emails to CM and TB to review. Downloaded OC discovery – 2.0 hours

11

1/28/2019 – Finalized & emailed settlement to OC. Finalized exhibit book, witness list, Bates #. Printed exhibit book for OC at kinkos – 6.0 hours

3/22/2019 – Proofread & format post hearing brief – 0.5 hours

Plaintiffs respond that the work performed in the challenged entries is substantive and typical of work performed by paralegals.

Photocopying and filing documents are clerical activities. *See Pace v. Pottawattomie Country Club Inc.*, No. 3:07-CV-347, 2009 WL 4843403, at *13 (N.D. Ind. Dec. 11, 2009); *Moore v. Midland Credit Mgmt., Inc.*, No. 3:12-CV-166, 2012 WL 6217597, at *12 (N.D. Ind. Dec. 12, 2012). The Court also considers downloading, printing, and labeling documents to be clerical. The entry for proofreading and formatting a brief is likewise on the clerical side of the scale. Out of the items listed, the Court finds that preparing for the pre-hearing conference and finalizing documents is substantive, non-clerical work. Sending email messages is a closer call, but in context, the entries above regarding email messages appear to be substantive, so the Court will allow them. Accordingly, the Court will allow 0.1 hours of the 12/11/2018 entry, 0.5 hours of the 1/4/2019 entry, 0.1 hours of the 1/14/2019 entry, 1.0 hours of the 1/25/2019 entry, and 4.0 hours of the 1/28/2019 entry. Confusingly, Plaintiffs state that they only seek fees for 3.7 hours of MJC paralegal time for this time period, which is less time than the Court has found to be appropriate above. Accordingly, there will be no deduction.

Defendants also object to the February 28, 2019 entry for 7.2 hours of "scanning and identifying documents, review of exhibit lists and entered exhibits, typing of notes and other materials in preparation for week two of hearing." (Pls.' Ex. 4, App'x C, p. 12[1], ECF No. 53-1). This work is clerical and will be disallowed.

---

[1] This citation is to the page number of the appendix; in ECF numbering, it is page 129 of ECF No. 53-1.

Defendants also challenge an entry, dated April 16, 2021, for Ms. Kerr's time spent on "Final proofread and review before sending to CM, TB, and SC and filing in ICHAMP." *Id.* at 11. Defendants assert that part of this time was spent "filing in ICHAMP," (Defs.' Br. 12, ECF No. 51). The text is ambiguous; either it could mean that this time was spent performing the proofread and review (and the remaining text provides context but does not describe work performed), or it could mean that this time was spent (1) performing the final proofread and review, *and then* (2) sending to CM, TB, and SC, and (3) filing in ICHAMP. Plaintiffs bear the burden of showing that the time spent was reasonable, and they do not respond to this argument, so the Court finds that Plaintiffs have not shown that this contested 0.1 hour of time is reasonable, so it will be deducted.[2]

> ### b.     Travel Time

In the Seventh Judicial Circuit, the presumption is that reasonable travel time is billed at the attorney's normal billing rate. *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984). Without challenging the presumption, Defendants object to 1.5 hours spent on travel on both January 7, 2019, and February 2, 2019, by Ms. Michael. Ms. Michael's office address provided to the Court is located in a northern suburb of Indianapolis. Defendants assert that Ms. Michael is not "local counsel" and that Plaintiffs should have attempted to retain local counsel instead. Judges in the Northern District of Indiana have rejected this argument. *D.D.M.*, 2020 WL 6826490, at *7; *E.U. ex rel. Uhrina v. Valparaiso Cmty. Sch.*, No. 2:07-cv-238, 2008 WL 2626786, at *7 (N.D. Ind. June 27, 2008). A total of three hours spent over two days traveling between Indianapolis and northwest Indiana is reasonable travel time.

---

[2] Defendants challenge other CMK entries in their motion, but while those entries appeared on an earlier invoice sent to Defendants, those entries are not in Plaintiffs' billing records as submitted to the Court in their request for an award of fees.

Regarding Ms. Kerr's travel, however, Defendants have a stronger argument, and one to which Plaintiffs did not respond. Ms. Kerr is based in Texas. Per Texas tradition, she billed for half of the ten hours she spent traveling on March 2, 2019. The Court finds that billing even a reduced five hours for an attorney to travel from Texas to Indiana to attend a hearing is unreasonable. The Court reduces the hours from 5.0 to 1.5.

c.      Overstaffing

Defendants argue that Plaintiffs' use of three partner-level attorneys in this case was unwarranted. Defense counsel Monica J. Conrad submitted an affidavit in which she states that, in her and her partner's experience, the majority of administrative hearings held before IHOs are staffed by one attorney for each party. (Aff. Monica J. Conrad ¶¶ 2, 4, ECF No. 74-1). Ms. Conrad further states that her co-counsel, Stephanie Slone, was present at the hearing for training purposes and Ms. Slone's training time was not billed to the client. *Id.* at ¶¶ 5-6. Ms. Conrad also avers that this case "was not unusually complex and did not involve an unusual amount of witnesses or evidence." *Id.* at ¶ 7.

In contrast, special education attorney Pamela Cleary stated in her declaration that "the time expended in the instant matter was particularly reasonable and necessary for a vigorous and capable representation of the student in pursuit of a Free Appropriate Public Education." (Decl. Benjamin Hinerfeld Ex. 5 ¶ 13, ECF No. 53-1).

Defendants first submit that Ms. Kerr's and Mr. Blessing's billed hours should be disallowed in their entirety. To be sure, it is sometimes appropriate to disallow "time spent by two partners simultaneously doing the same thing," particularly in a straightforward case. *Montanez v. Simon*, 755 F.3d 547, 555 (7th Cir. 2014). However, "[u]se of more than one lawyer is common in legal practice. Consultation among lawyers ensures that they do not overlook significant facts or

14

inquiries." *Bohen v. City of E. Chi.*, 666 F. Supp. 154, 157 (N.D. Ind. 1987). If Ms. Kerr and Mr. Blessing had not performed any work on this case at all, Ms. Michael would surely have performed at least some of their work. A blanket disapproval of Ms. Kerr's and Mr. Blessing's time is inappropriate.

Defendants also argue that even if some of Ms. Kerr's and Mr. Blessing's billed hours are allowed there are certain billing entries that should be disallowed as unnecessarily duplicative. They challenge 1.58 hours spent reviewing filings, 10.94 hours spent reviewing each other's work, 4.74 hours spent communicating with each other, and 81.82 hours spent in court hearings and conferences. As noted above, having two attorneys on a case is not abnormal. Communication between attorneys and the collegial review of each other's work is a natural result of working with co-counsel. The Court does not find this time to be duplicative, with the exception of all three attorneys being present at the hearing on February 26, 2019. Two attorneys would have been sufficient. The Court disallows Ms. Kerr's 8.0 hours billed for attending the hearing on that date.

### d.      Vague Entries

Billing entries should identify the general subject matter of how the time was spent. *Greenfield Mills, Inc. v. Carter*, 569 F. Supp. 2d 737, 745 (N.D. Ind. 2008) (quoting *Hensley*, 461 U.S. at 437 n.12 (1983)). Defendants object to four billing entries in February 2019 for 10.0 hours each of paralegal services that provide no detail as to the work performed. This objection is well-taken, and the Court disallows 40.0 hours of billing entries.

### e. Irrelevant Entries

Defendants also object to 2.9[3] hours of billing entries related to (1) communications by Plaintiffs' counsel to a partner at defense counsels' firm (who had not appeared in this matter), (2) research on Indiana Small Claims Court rules, and (3) case research into a possible ADA claim.

As detailed above, the small claims court matter is intertwined with K.W.'s suit in search of FAPE. Further, the fact that no ADA claim arose does not mean that attorney time was not well spent researching the issue. Sometimes, research leads to the conclusion that a particular claim is not appropriate, but that does not mean that the attorney was ill-advised to research the claim. The Court will allow those billing entries. The Court agrees, however, that communication with the partner at defense counsels' firm should be disallowed. The partner had not entered an appearance in this matter, and Plaintiffs' do not defend these entries. The Court will disallow 2.0 hours.

### f. Printing Costs

Defendants challenge Plaintiffs' request for the printing and binding of materials for the hearing. Plaintiffs counter that costs of trial exhibits and binders are reimbursable, citing 20 U.S.C. §1415(i)(3)(B)(i)(I) and *Baxter Int'l v. McGaw, Inc.* in support. No. 95 C 2723, 1998 WL 102668, at *3 (N.D. Ill. Mar. 3, 1998) ("Courts have long permitted taxation as costs those sums expended for exemplification and copies of papers necessarily obtained for use in the case so long as the per copy charge is reasonable."). Plaintiffs have not provided the Court with the per copy charge or any way to determine the reasonability of the cost. The Court will not award these costs.

### 2. *Federal Litigation*

Defendants argue that Plaintiffs should receive no attorney fees and costs related to the federal litigation, noting that Defendants made an offer of settlement of the fees before this federal

---

[3] Defendants also objected to an entry for 0.1 hours, but Plaintiffs have removed that entry from their billing invoice.

litigation was initiated. This argument is better suited for the Court's analysis on degree of success, below. Defendants argue in the alternative that there are improper billing entries for clerical work, travel, overstaffing, and excessive or duplicative time.

a.  Clerical Work

Defendants identify many entries regarding clerical matters, such as scheduling a deposition and associated travel, Bates-stamping documents, and making court filings. The Court will allow 0.5 hours of paralegal time spent finalizing documents, but will disallow the remaining 8.41 hours of paralegal time and 1.2 hours of Ms. Kerr's time.

b.  Travel Time and Expenses

Defendants take issue with Ms. Kerr traveling from Texas to attend a deposition in this matter, which was also attended by Ms. Michael. Though the Court, above, found no issue in general with having two attorneys on a case, in this instance, flying in a second partner-level attorney from Texas was excessive. The Court disallows 7.3[4] hours and $782.89 in expenses.

c.  Overstaffing

At the federal level, Plaintiffs added a fourth partner-level attorney. The 0.1 hour spent discussing the addition of yet another attorney to this case will be disallowed, as the existing attorneys should have either been able to handle the case themselves or not pass this cost on to their client. Defendants challenge 7.13 hours spent reviewing co-counsel's work and 5.23 hours spent either on calls with each other or appearing with multiple attorneys before the Court. The Court does not find any of this time to be excessive and in need of trimming.

Plaintiffs do not respond to Defendants' contention that Mr. Blessing spent 40.75 hours drafting a motion for summary judgment that was never filed. It appears that this work was

---

[4] The Court adds in here the 2.0 hours spent attending the deposition, which Defendants challenged in a separate section of their response to Plaintiffs' motion.

duplicative of Mr. Hinerfeld's drafting of Plaintiffs' motion for fees. Accordingly, the associated 40.75 hours of billing entries are disallowed.

### d.     Excessive or Duplicative Time

Defendants believe that the two identical entries for 0.4 hours spent by Ms. Michael emailing Plaintiffs with a cases status update are duplicative. With no response by Plaintiffs, the Court agrees and will disallow one of the entries as duplicative.

Regarding a notice of deposition, both Ms. Kerr and a paralegal billed for drafting it and sending email regarding it. Ms. Kerr billed 1.0 hour, and the paralegal billed 0.4 hours. Ms. Kerr billed another 0.3 hours for revising the notice. The Court reduces Ms. Kerr's time by 0.5 hours, as the time billed appears excessive. Similarly, time was billed regarding a notice of intent to file a motion for summary judgment by Ms. Kerr and a paralegal.  Given the simplicity of the document, the Court reduces Ms. Kerr's time to 0.2 and the paralegal's time to 0.3.

### e.     Motion to Compel

In their reply, Plaintiffs include a request for attorney fees incurred since October 4, 2020. It appears that 5.7 hours were spent regarding a motion to compel, which was filed by Defendants and resolved by the parties without Court order. Because Federal Rule of Civil Procedure 37(a)(5) provides for fee-shifting regarding motions to compel and because the parties resolved this matter on their own, the Court finds it unreasonable to shift the costs on time spent on this motion.

The Court does not find the other challenged entries to be excessive.

### B. Reasonable Hourly Rates

Plaintiffs, as the parties seeking an award of fees, bear the burden of showing the reasonableness of the hourly rates claimed. *Bratton*, 943 F. Supp. 2d at 902 (citing *Spegon*, 175 F.3d at 550). But, "[o]nce an attorney provides evidence of [his or her] billing rate, the burden is

upon the defendant to present evidence establishing 'a good reason why a lower rate is essential.'" *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996) (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993)). Courts presume that attorneys' actual billing rates are appropriate to use as market rate. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011).

Plaintiffs ask for the following rates: $325 per hour for Attorney Catherine Michael's time, $300 per hour (non-hearing time) and $325 per hour (hearing time) for Attorney Thomas Blessing's time, $430 per hour for Attorney Sonja Kerr's time, $375 per hour for attorney Benjamin Hinerfeld's time, $95 per hour for paralegals Sarah Chapman's and Lori Elmlinger's time, and $110 per hour for paralegal Jacqueline Goehler's time.

Plaintiffs' November 14, 2018 contract for Ms. Michael's legal services provides that "[A]ttorney time will be billed at $285 per hour for prehearing work and $295 per hour for the due process hearing." (Defs.' Ex. 24 ¶ 3, ECF No. 68-1). The contract dictated that Ms. Michael could bring in co-counsel "upon the same terms as set out herein" and that paralegal fees would be billed at $90 per hour. *Id.* at ¶ 8. Plaintiffs agreed to pay a $100 retainer and to monthly pay $100 toward the balance. *Id.* at ¶ 2.

By affidavit, Ms. Michael has shown that her current rate is $325 per hour and Ms. Kerr's rate is $430 per hour. (Decl. Benjamin Hinerfeld Ex. 4 ¶ 7, ECF No. 53-1; Decl. Benjamin Hinerfeld Ex. 4 App'x B ¶ 3, ECF No. 53-1). She further states that school districts and their insurance carriers routinely pay her hourly rate of $325 and that she is familiar with rates charged by Indiana special education attorneys and her rate is reasonable, customary, and within the range of prevailing rates in the area. (Decl. Benjamin Hinerfeld Ex. 4 ¶¶ 9, 11, ECF No. 53-1). Appendix

B to Ms. Michael's affidavit shows that the 2020 hourly rate for paralegal assistance was $90. (Decl. Benjamin Hinerfeld Ex. 4 App'x B ¶ 8, ECF No. 53-1).

Attorney Hinerfeld's declaration provides that, though he normally charges $425 for Philadelphia-area clients, he has billed his time at $375 in this case to reflect Indiana's legal market. (Decl. Benjamin Hinerfeld, ¶¶ 11, 22, ECF No. 53-1).

In a 2019 affidavit, special education attorney Pamela Cleary stated that she charged $300 in Indiana, which was consistent with or lower than the prevailing rate; she affirmed the reasonability of $295, $300, and $400 as hourly rates for Ms. Michael, Mr. Blessing, and Ms. Kerr, respectively. (Decl. Benjamin Hinerfeld Ex. 5 ¶¶ 25, 28, ECF No. 53-1)

The best evidence of attorney rates are what the attorneys actually charge. Here, there is direct evidence that Ms. Michael entered a contract at the end of 2018 to provide her services at $285 per hour for prehearing time and $295 for hearing time and to provide paralegal services at $90 per hour. The contract further provided that other attorneys might be brought on the case on the same terms. Though there is evidence that the higher rates requested by the attorneys are reasonable, the Court cannot ignore this evidence that the lower rates are also reasonable and agreed to by Plaintiffs and Ms. Michael.

Plaintiffs identify that their payment plan was a modest monthly payment of $100 and argue that the contract is essentially a contingency fee arrangement. It is undeniable that it would take more than a lifetime to pay the nearly $300,000 in attorney bills as invoiced in this case at the agreed monthly rate. However, if Plaintiffs' counsel viewed this as a contingency fee contract, for what purpose were the hourly rates included if not to indicate how much the attorney's time was worth? The Court denies the request for higher fees and finds that, for this case, the reasonable rate for attorneys Michael, Kerr, and Hinerfeld is $285 per hour, except that the rate for time billed

for the due process hearing is $295. The reasonable hourly rate for paralegal time billed by this firm is $90.

Regarding Mr. Blessing, there is a separate, undated, agreement with Plaintiffs for his legal services, which provides for $300 and $325 hourly rates for non-hearing and hearing time, respectively. (Pls.'s Ex. 12, App'x A, p. 2[5], ECF No. 53-1). This agreement states that it does not apply to any action in federal court. *Id.* at 1. The agreement did not cover a rate for paralegal services. As with the other attorneys, this agreement provides excellent evidence of the market rate for Mr. Blessing's legal services, and the Court will award this rate. Although paralegal services are not addressed in this agreement, the Court finds the billed hourly rate of $110 to be reasonable.

Thus, the lodestar calculation for the Due Process Complaint proceeding is as follows:

- Ms. Michael: 226.3 hours at $285 per hour ............................................$64,495.50
- Ms. Michael (hearing time): 77.2 hours at $295 per hour .......................$22,774.00
- Ms. Kerr: 55.65 hours at $285 per hour ...............................................$15,860.25
- Ms. Kerr (hearing time): 25.81 hours at $295 per hour ..........................$7,613.95
- Mr. Blessing: 158.35 hours at $300 per hour .......................................$47,505.00
- Mr. Blessing (hearing time): 47.5 hours at $325 per hour ......................$15,437.50
- CMK Paralegal time: 39.5 hours at $90 per hour[6] ...............................$3,555.00
- MJC Paralegal time: 3.7 hours at $110 per hour ....................................$407.00
   **SUBTOTAL** ...................................................................................$177,648.20

Additionally, the lodestar calculation for the federal litigation is:

- Ms. Michael: 14.8 hours at $285 per hour ............................................$4,218.00
- Ms. Kerr: 39.98 hours at $285 per hour ...............................................$11,394.30
- Mr. Blessing: 18.45 hours at $300 per hour .........................................$5,535.00
- Mr. Hinerfeld: 83.49 hours at $285 per hour .......................................$23,794.65
- CMK Costs: .......................................................................................$1,329.59
- MJC Paralegal time: 11.9 hours at $90 per hour ...................................$1,309.00
   **SUBTOTAL** ....................................................................................$48,089.94

Thus, the total lodestar amount is $225,738.14.

---

[5] This citation is to the page number of the appendix; in ECF numbering, it is page 187 of ECF No. 53-1.

[6] CMK listed this time under expenses.

**C. Degree of Success**

The Court may make a downward adjustment of the lodestar amount upon consideration of the prevailing party's degree of success. *See Ryan M. v. Bd. of Educ. of City of Chicago, Dist. 299*, 731 F. Supp. 2d 776, 795 (N.D. Ill. 2010). Defendants posit that a 25% reduction would be appropriate and identify that Plaintiffs did not receive their requested relief of compensatory education, 1:1 aide, extended school year services, social work, counseling and psychological services, occupational therapy, reimbursement, and evaluation for ASD. Plaintiffs, instead of focusing on the *relief* granted, look at the *issues* decided, noting that they prevailed in whole or in part on all nine of the issues and arguing that no reduction should be made.

A middle course between the parties' positions is appropriate. Plaintiffs did obtain a favorable result and prevailed on the issues (in whole or in part), but they did not receive some of the significant remedies that they had requested. "Fifteen percent is a common reduction when a plaintiff has achieved substantial, but not complete relief." *Ryan M.*, 731 F. Supp. 2d at 795.  The Court orders a 15% reduction of the lodestar amount, yielding $191,877.42 ($151,000.97 at the agency level and $40,876.45 at the federal level).

Defendants also argue that Plaintiffs' degree of success should be measured against rejected settlement offers. Defendants concede that their settlement offer was one day late to be made within the time limit set by the IDEA at 20 U.S.C. § 1415(i)(3)(D). If such an offer had been made, fees incurred after the date of the offer would be precluded from any award if the end result were less favorable than the offer made. Defendants' offer was ten days before trial, and the statute requires "more than ten days."

Defendants also contend that Plaintiffs protracted this litigation. Both parties failed to come to a settlement before the IHO rendered a decision. Defendants identify that Plaintiffs held out for

a 1:1 aide, which they did not receive, but Defendants also refused admit to the denial of FAPE and to agree to definitively drop the matter of pursuing property damages fees from Plaintiffs. It is regrettable that the parties could not resolve this matter without judicial intervention, but the lack of resolution rests evenly on the shoulders of all parties. The Court will not lower the fee award on the basis of the rejected settlement offers.

## CONCLUSION

Based on the analysis above, the Court **GRANTS in part** and **DENIES in part** both Defendants' Motion for Summary Judgment [DE 50] and Plaintiffs' Motion for Attorneys' Fees and Costs [DE 52]. The Court **AWARDS** $191,877.42 in attorneys' fees and costs for the due process hearing and this federal litigation. The Court directs the Clerk of Court to enter judgment in the above amount in favor of Plaintiffs and close this case.

SO ORDERED on September 30, 2021.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT